# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| DIANE M. MURPHY, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN[1], Acting )<br>Commissioner of Social Security )<br>Administration, )<br>      Defendant. ) | No. 12 CV 50209<br>Judge Iain D. Johnston |

## MEMORANDUM AND ORDER

Plaintiff Diane Murphy appeals the administrative denial of her application for disability benefits. For the reasons given below, the case is remanded for further administrative proceedings consistent with this order.

## Procedural Background

Ms. Murphy applied for disability benefits under both Title II and Title XVI on August 4, 2009, alleging an onset date of August 31, 2008. Her claims were denied initially on December 1, 2009, and upon reconsideration on April 13, 2010. On April 27, 2010, she requested a hearing before an Administrative Law Judge, which occurred on December 2, 2010, by video. Ms. Murphy was represented at the hearing by counsel.

On March 25, 2011, the ALJ determined that Ms. Murphy was not disabled. She sought review before the Appeals Council, but it denied her request, making the ALJ's decision the final decision of the Commissioner. She then timely appealed to this Court.

## Evidence Presented

During the hearing on December 2, 2010, Ms. Murphy testified that she has suffered anxiety since her parents died when she was a child. R. 57. She also testified that she suffers from depression, and that the anxiety and depression leave her nervous, unable to concentrate, and cause her to break out in sweats. R.33. She also testified she suffers from crippling arthritis, peripheral artery disease that causes weakness in her arms and legs, and pain in her chest that makes breathing so difficult she once went to the hospital. R. 48-49. She also told the ALJ that she suffers from asthma that causes coughing, wheezing, and shortness of breath, and that a metal plate she received after removal of a brain tumor causes headaches that she controls with ibuprofen but that never fully go away. R. 49 (asthma), 52-53 (headaches). In addition to ibuprofen, she takes Paxil, Amitriptyline and Seroquel for her depression, anxiety, and to help her sleep, and inhalers for her asthma. R. 48, 51.

---

[1] The current Acting Commissioner is automatically substituted under Federal Rule of Civil Procedure 25(d).

According to Ms. Murphy, her conditions have left her unable to lift more than five pounds, walk more than half a block, or stand more than 10-15 minutes. R. 49-50. She sleeps 10-12 hours per night, spends at least half her morning and afternoon sitting watching television, no longer cooks, does her own laundry and cleans her apartment but not "like I should anymore." R. 45-46, 48. She testified that she was fired from a telemarketing job in July 2008 because she was depressed and missed work. R. 36-37. Before that, she was fired from a job as a secretary because she got confused answering the phone and running the switchboard. R. 38. At the time of the hearing, she worked 20 hours a week helping an elderly friend by keeping him company and doing his dishes. R. 35. While there, she testified that she does no lifting, stood or walked about a quarter of the time, earned about $800 a month, but expected the job to end within two weeks. R. 35-36.

Ms. Murphy testified that she also drank alcohol---a pint of vodka daily, R. 55, and probably 3-5 beers every couple of days, R. 33---but stopped drinking after being hospitalized for acute alcohol intoxication on July 30, 2009[2], R. 63. At the time of the hearing, she had been sober for one year and attended Alcoholics Anonymous. R. 56.

Medical examiner Dr. Michael Ravin also testified at the hearing. According to Dr. Ravin, Ms. Murphy suffered from depressive and personality disorders that caused her difficulty getting along with people. R. 64, 68. He limited her to simple, repetitive types of work, without the need to recall or carry out complex or detailed instruction or make decisions. R. 68. He testified that during the time she drank alcohol, she would have missed work 1-4 times a week due to the drinking and blackouts. R. 69. Dr. Ravin testified that limitation would have ended when she became sober. R. 70. However, the ALJ acknowledged that even after she became sober, Dr. Ravin found the following limitations remained:

> there has been sobriety, since the time of her [July 31, 2009] hospitalization. . . . Since that time, there has existed mild limitation upon activities of daily living; the claimant has a moderate limitation, respectively, upon social functioning and maintaining concentration, persistence, and pace.

R. 13 (referring to Dr. Ravin's hearing testimony at R. 67).

Finally, a vocational expert testified about Ms. Murphy's prior positions and identified jobs she might still be able to perform based on hypotheticals presented by the ALJ. The vocational expert testified that the position of telemarketer is classified at the low end of semiskilled, but that as performed by Ms. Murphy was unskilled. R. 84. She further testified that a hypothetical employee able to lift/carry up to 20 pounds occasionally and 10 pounds

---

[2] Confusion over the date of Ms. Murphy's hospitalization arises both during hearing testimony and in the ALJ's opinion. *See, e.g.*, R. 63 (Ms. Murphy testified "I, maybe I'm off on my date and month but I have been sober for over a year at this point. I don't know all the dates."); R. 12 & 19 (ALJ notes the confusion that arose at the hearing and that the correct date she was hospitalized and got sober was July 31, 2009, R. 12, but then later uses September 22, 2009, as the date she got sober, R. 19). The Court uses July 31, 2009, the date given in the medical records, R. 314-18, but notes that the confusion does not affect the Court's analysis.

frequently, able to sit, stand and walk up to six hours each eight-hour day, and able to understand, recall, focus upon, attend to, and carry out simple routine-repetitive instructions at a sustained workmanlike pace would be able to perform Ms. Murphy's past work as a telemarketer, and would also be able to work as a cashier or assembler. R. 80.

### ALJ's Decision

In his written decision, the ALJ found that Ms. Murphy suffered from the severe impairments of peripheral vascular disease, unspecified hypertension, hypothyroidism, chronic obstructive pulmonary disease, an ulcer, depression, and alcohol dependence/abuse, but that none met a Listing either individually or in combination. R. 15. He then determined her residual functional capacity both while she was still drinking and after she got sober. The limitations on physical functioning were the same under both RFCs and included the ability to lift 20 pounds occasionally, 10 pounds frequently, and to sit and stand up to six hours each eight-hour day. R. 16, 19. But while the ALJ found that Ms. Murphy could not focus on even simple, routine and repetitive tasks at a consistent work pace while drinking, now that she was sober she could "understand, recall, focus upon, attend to, and carry out simple routine-repetitive instructions and to focus upon, attend to, and perform simple routine-repetitive tasks, at a sustained workmanlike pace." R. 19. (after 7/31/2009 when she became sober). The ALJ found that under her existing RFC, and based on the hypotheticals presented to the vocational expert incorporating that RFC, Ms. Murphy could perform her past work as a telemarketer, and in addition, she could work as a cashier or assembler. R.20. Therefore, he concluded that Mr. Murphy was not disabled. R. 21.

### Analysis

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Ms. Murphy asserts that two errors by the ALJ warrant a remand. The Court limits its review to the two errors alleged. First, Ms. Murphy argues that the ALJ erred by failing to include in his hypotheticals to the vocational expert a moderate limitation in concentration, persistence, or pace. Indeed, the hypotheticals the ALJ presented included either no restriction as to concentration, persistence, or pace, or the following restriction that allowed for simple, routine work at a sustained workman like pace:

> the individual did not have the capacity to understand, recall, focus
> on, attend to or carry out complex or detailed instructions or the
> ability to perform complex or details tasks. The individual would
> however retain the ability to understand, recall, focus on, attend to
> and carry out simple, routine, repetitive instructions as well as to
> focus on, attend to and perform simple, routine repetitive type
> tasks at a sustained workman like pace.

R. 80-81. The Commissioner responds that Ms. Murphy misapprehends the ALJ's analysis of her residual functional capacity. The Commissioner contends that the ALJ found Ms. Murphy was limited in concentration, persistence, or pace only during the period she consumed alcohol. R. 16 (adopting an RFC prior to July 31, 2009, under which "the claimant does not possess the capacity to sustain attention, focus, concentration or a consistent work pace, for a combined total of six to eight hours per day" for even simple matters). The Commissioner points out that the ALJ eliminated that restriction for the period after Ms. Murphy got sober when he found that she could "carry out simple routine-repetitive instructions . . . at a workmanlike pace." R. 19 (adopting an RFC beginning July 31, 2009).

But the only evidence on Ms. Murphy's ability to maintain a workmanlike pace that the ALJ cited was testimony from medical expert Dr. Ravin who, as noted above, testified that even during her period of sobriety beginning July 31, 2009, "there has existed mild limitation upon activities of daily living; the claimant has a moderate limitation, respectively, upon social functioning and maintaining concentration, persistence, and pace." R. 13 (referring to Dr. Ravin's testimony at R. 67). Although the ALJ is not bound by the opinions offered by a medical expert, he must evaluate them in light of other medical evidence and must explain the weight he gives it including a decision to disregard it. *Burke v. Colvin*, No. 11 CV 50001, 2013 WL 5288155, at *12 (N.D. Ill. Sept. 17, 2013). Here, the ALJ did not explain why he rejected the moderate limitation noted by Dr. Ravin for the period beginning when she became sober on July 31, 2009, even though it was the only evidence on the issue the ALJ cited.

By failing to note any contrary evidence or explain why he rejected Dr. Ravin testimony, the ALJ failed to adequately explain the RFC he adopted that did not limit Ms. Murphy to moderate concentration, persistence, and pace. *Id.* ("Here, the ALJ did not provide 'good reasons' to discount [the medical expert]'s opinion because she did not point to any specific medical evidence that was inconsistent with his opinion."). In fact, the ALJ explicitly noted that he "deemed" the medical expert "reliable and persuasive." R. 13. In the absence of any explanation for why he rejected the opinion of the medical expert he found to be reliable and persuasive, the ALJ's RFC determination is not supported by substantial evidence. *Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 969-70 (N.D. Ill. 2013) (ALJ must explain reason for failing to include in his RFC a limitation given by a medical expert whose opinion he otherwise adopted). And because the ALJ left the moderate limitation out of the hypotheticals presented to the vocational expert, his conclusion that she could work as a telemarketer, cashier or assembler is also unsupported by substantial evidence. Accordingly, this case must be remanded to the Social Security Administration.

Second, Ms. Murphy argues that the ALJ's conclusion that she could resume unskilled work as a telemarketer was unsupported by substantial evidence because the Dictionary of Occupational Titles classifies the position as the low-end of semiskilled. The Court need not resolve this argument because it has already determined that the ALJ did not adequately support the RFC he used to determine that she could resume work as a telemarketer. However, for the sake of completeness, the Court notes that the vocational expert acknowledged that typically the telemarketer position is classified as "[l]ow semi." R. 86. But after hearing Ms. Murphy's description of how she performed the job along with specific follow-up questions from the ALJ including that she read from a script and referred leads to her boss, the vocational expert concluded that "[a]s she did it it would be unskilled." R. 85.

Ms. Murphy brushes off the significance of any distinction between how the job was classified and how she performed it by simply asserting – unpersuasively and without any authority – "a telemarketer is a telemarketer." Reply [18] at 1. But an ALJ is entitled to determine whether a claimant can return to her previous job based on how she performed that job in the past rather than its classification under the DOT. *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) ("as the VE's testimony reflected the nature of Jens's work as it was actually performed by him, the ALJ's reliance on the VE's testimony was proper"); *see also Lawrence v. Astrue*, No. 11 CV 205, 2012 WL 3545284, at *10 ("A claimant is not disabled if he can perform his past relevant work, either as he performed it, or as it is generally performed in the national economy.").

Here, the vocational expert testified that Ms. Murphy's past work as a telemarketer was unskilled and explained why. R. 85. At the hearing counsel challenged only how the DOT classifies the telemarketing position, not the vocational expert's basis for concluding that Ms. Murphy performed the job at an unskilled level:

> Q: …the telemarketing check that because that's an SVP: 3, that would be the low end of semiskilled, right?
>
> A: Let me check that because . . . [i]t is an SVP: 3 in the DOT but I believe we were talking about as performed.
>
> Q: Well, I thought you said it was, you said it was 2 in the DOT . . . [a]nd it's not, it's a 3.
>
> A: It's a 3, that's correct.
>
> Q: Well, okay. So you do admit that?
>
> A: Yes, I would.
>
> Q: Yeah, but that's not what you said, yeah, thanks.

R. 83-84. Counsel did not identify any specific conflict between the vocational expert's conclusion and the DOT during the hearing, nor has counsel done so in his brief, which consists

almost entirely of block quotes of hearing testimony rather than argument or citation to authority. Although counsel quotes the DOT's description of the telemarketing position, he does not explain how the description conflicts with the vocational expert's conclusion but, rather, states without elaboration that Ms. Murphy's "description of what she did comports with a regular telemarketing job under the DOT listing." Memorandum [14] at 10. As a result, counsel has presented no basis for concluding that the ALJ improperly relied on the vocational expert's assessment that Ms. Murphy's past work as a telemarketer was unskilled as performed.

## CONCLUSION

For the reasons stated, the plaintiff's motion for summary judgment is granted to the extent that the case is remanded to the Social Security Administration for further proceedings consistent with this order. The Commissioner's motion for summary judgment is denied.

Date: April 1, 2015        By: _____
                               Iain D. Johnston
                               United States Magistrate Judge